# In the United States Court of Federal Claims

No. 17-2052C
Filed Under Seal: July 26, 2019
Reissued: September 4, 2019[*]

| | |
|---|---|
| LUKE T. WEST, | Military Pay; Motion For Summary |
| | Judgment; RCFC 56; Motion For |
| Plaintiff, | Judgment Upon The Administrative |
| | Record; RCFC 52.1; Motion For Relief |
| v. | From Protective Order; Collateral |
| | Estoppel. |
| THE UNITED STATES, | |
| | |
| Defendant. | |
| | |

*Claiborne W. Brown*, Counsel of Record, Mandeville, LA, for plaintiff.

*Daniel S. Herzfeld*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Lieutenant P. Tyson Marx*, Of Counsel, Judge Advocate General Corps, United States Navy, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.      INTRODUCTION

In this Military Pay Action, plaintiff, Luke T. West, challenges his general court-martial sentence and conviction under Article 93 of the Uniform Code of Military Justice ("UCMJ") and subsequent discharge from the military. *See generally* Am. Compl. As relief, plaintiff seeks, among other things: (1) to vacate the findings and sentence of his general court-martial; (2)

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 26, 2019 (docket entry no. 79). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on September 3, 2019 (docket entry no. 84) proposing certain redactions which the Court has adopted. And so, the Court is reissuing its Memorandum Opinion and Order, dated June 21, 2019, with the agreed-upon redactions indicated by three consecutive asterisks within brackets ([* * *]).

placement in retirement status; (3) the correction of his military records, back pay and other benefits; or, (4) alternatively, that the Court remand this motion to the Navy Office of the Judge Advocate General.  Am. Compl. at Prayer for Relief; Pl. Mot. at 76.

The parties have filed cross-motions for judgment upon the administrative record on the issue of whether the United States Marine Corps committed errors during plaintiff's general court-martial and post-trial proceedings that would warrant vacating his general court-martial conviction.  *See generally* Pl. Mot.; Def. Mot.  The government has also moved for summary judgment on the issue of whether plaintiff is collaterally estopped from arguing that certain individuals colluded to falsely accuse him of sexual assault and sexual harassment during the general court-martial proceedings.  Def. Mot. 18-22.

In addition, plaintiff has filed a motion for relief from the Protective Order entered in this matter on April 24, 2018.  *See generally* Pl. Mot. for Relief.  For the reasons set forth below, the Court:  (1) **GRANTS** the government's motion for summary judgment; (2) **GRANTS** the government's motion for judgment upon the administrative record; (3) **DENIES** plaintiff's cross-motion for judgment upon the administrative record; (4) **DENIES** plaintiff's motion for relief from protective order; and (5) **DISMISSES** the amended complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff, Luke T. West, alleges that he was the victim of "a coordinated leveling of false allegations of sexual assault against" him while enlisted in the United States Marine Corps ("Marine Corps") and stationed at the Marine Forces Reserves located in New Orleans, LA.  Am. Compl. at ¶ 17.  Plaintiff also challenges his general court-martial conviction and sentence under Article 93 of the UCMJ and his subsequent discharge from the military.  *See generally id.*  As relief, plaintiff seeks, among other things: (1) to vacate the findings and sentence of his general

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); the amended complaint ("Am. Compl."); the government's motion for judgment upon the administrative record and motion for summary judgment ("Def. Mot."); and plaintiff's cross-motion for judgment upon the administrative record ("Pl. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

court-martial; (2) placement in retirement status; (3) the correction of his military records, back pay and other benefits; or, (4) alternatively, that the Court remand this motion to the Navy Office of the Judge Advocate General.  Am. Compl. at Prayer for Relief; Pl. Mot. at 76.

### 1.     The Marine Corps Investigation

As background, plaintiff enlisted in the Marine Corps on September 30, 1998.  AR Tab 40 at 753.  Prior to his general court-martial, which resulted in a reduction in rank to Lance Corporal, plaintiff rose to the rank of Gunnery Sergeant.  AR Tab 1 at 6 (sentence included a reduction in rank to E-3, Lance Corporal).

In June 2013, the Finance Office at Marine Forces Reserve received formal equal opportunity complaints and unrestricted sexual assault and prevention response ("SAPR") complaints against plaintiff from Sergeant ("Sgt.") E[* * *] P[* * *]; Staff Sgt. R[* * *] A[* * *]; Lance Corporal B[* * *] H[* * *]; and Staff Sgt. C[* * *] R[* * *].  AR Tabs 23-25, 34-35.  These sexual assault and sexual harassment complaints were referred to the Naval Criminal Investigative Service ("NCIS") for investigation.  AR Tab 85 at 1741; *see generally* AR Tabs 16-16.2.

After the Article 32 investigating officer found probable cause existed to send many of the charges against plaintiff to a general court-martial, the Marine Corps Convening Authority ("Convening Authority") referred plaintiff to a general court-martial on December 23, 2013, and charged plaintiff with, among other things, sexual assault and various violations based upon indecent language.  AR Tab 16.1 at 341, 343-48; AR Tab 155.1 at 3459.  On February 20, 2014, one of the witnesses against plaintiff, Staff Sgt. A[* * *], was approached by Master Gunnery Sgt. Thomas, who handed her 140-pages of text messages between Staff Sgt. A[* * *] and plaintiff and stated that she would be embarrassed if these text messages came out at trial.  AR Tab 16 at 328.  Staff Sgt. A[* * *] subsequently testified that she felt pressure was being put on her to testify in a specific manner in connection with plaintiff's general court-martial.  *Id*.  And so, the NCIS opened a new investigation into plaintiff for obstruction of justice on February 26, 2014.  AR tab 155.1 at 3565-66; *see also* AR Tab 96 at 2298-99; AR Tab 155.1 at 3530.

On April 23, 2014, the Convening Authority withdrew and dismissed the initial charges brought against plaintiff without prejudice, based upon the new investigation.  AR Tab 16.1 at

349; AR Tab 155.1 at 3459-60.  In July 2014, the Marine Corps conducted a second investigation of plaintiff's conduct, which resulted in new violations of Articles 81 and 134 involving obstruction of justice and conspiracy to obstruct justice.  AR Tab 16 at 324-30 ("The new charges are Charge I [81 UCMJ: conspiracy to obstruct justice] and . . . specification 3 under Charge VI [134 UCMJ: bringing discredit to the armed forces and obstruction of justice]."); *see also* AR Tab 85 at 1498-1501.  The investigating officer determined that there was probable cause to move forward on the new charges against plaintiff.  AR Tab 16 at 325.

### 2.    The General Court-Martial

On August 21, 2014, the Convening Authority referred the new case against plaintiff to a general court-martial, charging plaintiff with five violations of the UCMJ, namely:  (1) conspiring to obstruct justice regarding the testimony of Staff Sgt. A[* * *] in violation of UCMJ Article 81; (2) three specifications of failing to obey lawful regulations in violation of UCMJ Article 92; (3) four specifications of maltreating subordinate Marines in violation of UCMJ Article 93; (4) four specifications of assault in violation of UCMJ Article 128; and (5) three specifications of prejudicing good order and discipline and bringing discredit to the armed forces, including obstruction of justice, in violation of UCMJ Article 134.  AR Tab 17 at 371-76; AR Tab 155.1 at 4261.  Specifically relevant to this dispute, plaintiff raised several evidentiary and other objections prior to, and during, the general court-martial proceedings related to the investigation and those proceedings.  Am. Compl. at ¶¶ 42-49.

### a.    Plaintiff's Unlawful Command Influence Motion

First, prior to the general court-martial trial, plaintiff moved to dismiss the criminal charges filed against him based upon an actual or apparent unlawful command influence ("UCI").  *See* Am. Compl. at ¶ 42; *see generally* AR Tab 85.  Specifically, plaintiff raised four "interrelated factors" that he argued demonstrated actual or apparent UCI, namely, that:

> (1)    The Marine Corps Commandant's 2012 public statements (the "Marine Corps Heritage Brief") regarding the frequency of sexual assaults in the military had created a political environment presuming plaintiff's guilt instead of innocence;

> (2)    The Department of Defense Instruction and Marine Corps Order regarding the SAPR program effectively required the Convening Authority to presume plaintiff's guilt instead of innocence, because those regulations include protections to encourage sexual assault victims to

report without fear of reprisal, actions taken under these regulations resulted in the Convening Authority presuming plaintiff's guilt, and the sexual assault training improperly influences witnesses and members venire (*i.e.* the jury);

(3)     The Convening Authority ignored alleged, criminally false statements made by the four victims and disparately investigated and charged plaintiff instead of the four victims that accused plaintiff; and

(4)     The members venire of the court-martial would notice the disparities in the investigation that resulted in ignoring the alleged criminally false statements of the victims and how plaintiff was investigated and charged despite the asserted lack of merit to the charges against plaintiff.

*See* AR Tab 85 at 1502, 1534-1545.

On September 26, 2014, the military judge held a pre-trial hearing regarding plaintiff's motion to dismiss for UCI. AR Tab 155.1 at 3519. During the hearing, the two NCIS investigators who investigated the criminal charges brought against plaintiff independently testified that they felt no pressure to conduct the investigation. *Id.* at 3530, 3535-36. And so, the military judge denied plaintiff's motion to dismiss. *Id.* at 3541-42.

### b.     Plaintiff's Motion To Suppress Text Messages

Second, plaintiff unsuccessfully moved to suppress certain text messages between himself and Master Gunnery Sgt. Thomas upon the ground that NCIS had obtained the text messages based upon an unlawful search and seizure. *See* Am. Compl. at ¶ 48(a); *see generally* AR Tab 81. After holding oral argument on plaintiff's motion to suppress, the military judge concluded that the authorization that plaintiff gave to NCIS to search his cell phone "was limited by the agreement brokered between the parties and by the court" to authenticate text messages between plaintiff and Staff Sgt. A[* * *]. AR Tab 106 at 2560. But, the military judge concluded that, NCIS had acted in good faith in conducting the search and would have inevitably discovered this evidence because NCIS Special Agent ("SA") Moss was actively pursuing leads that would have led to these texts being uncovered. *Id.* at 2562; AR Tab 155.1 at 3586-89. And so, the military judge found the text messages to be admissible. AR Tab 155.1 at 3589.

### c.     *Voir Dire* Questions Regarding Sexual Assault

Third, plaintiff objected to the military judge's exclusion of his proposed *voir dire* questions regarding sexual assault.  AR Tab 155.1 at 3611-12; *see also* Am. Compl. at ¶ 48(c).  During the *voir dire*, the military judge instructed the members venire that "[i]t is not a sexual assault case," but "there is a slight hint of that in the record" because "some of the assaults that are charged is touching somebody's leg in a way you all might perceive as a type of sexual connotation."  AR Tab 155.1 at 3637-38.  The military judge also addressed the Marine Corps Heritage Brief which addresses sexual assault.  *Id.* at 3638.  The military judge informed the prospective members venire that the Marine Corps Commandant had specifically reiterated that, even in cases of sexual assault, there is a "presumption of innocence unless proven otherwise" and "whether or not a Marine committed an offense and what shall happen, will be determined on the facts presented to the court-martial."  *Id.* at 3638-39.  And so, the prospective members venire affirmatively responded that they would follow the judge's instructions to fairly weigh the facts in this case and presume plaintiff innocent until proven guilty.  *Id.* at 3639.

### d.     Admission Of Text Messages

Fourth, plaintiff objected to the exclusion of certain text messages between plaintiff and Staff Sgt. A[* * *] during the general court-martial proceedings.  Am. Compl. at ¶ 48(d).  During the testimony of Staff Sgt. A[* * *], the prosecution introduced several text messages between plaintiff and Staff Sgt. A[* * *] as evidence of plaintiff's maltreatment and obstruction of justice.  AR Tab 155.1 at 3870-71, 3911-15; *see also* AR Tab 20 at 484 (providing the text messages as an exhibit).  Plaintiff also sought to offer into evidence an excerpt of six pages of text messages between plaintiff and Staff Sgt. A[* * *] to show that plaintiff had not maltreated Staff Sgt. A[* * *].  Tab 155.1 at 4016-22; *see generally* AR Tab 45.  The military judge denied plaintiff's request, finding that the six pages of text messages that plaintiff sought to introduce were either not relevant under Military Rule of Evidence 401, or "confusing, misleading, or wasting time" under Military Rule of Evidence 403.  AR Tab 155.1 at 3998, 4016-23.

Plaintiff was allowed however, to use the subject text messages to attempt to refresh the recollection of Staff Sgt. A[* * *] during the general court-martial proceedings.  *Id.* at 3932.  But, plaintiff did not move to have the entire 140-pages of text messages entered into evidence

during those proceedings.  *Id.* at 4208 ("Of the 140 pages of these text messages, [plaintiff's counsel] sought admission to this court-martial of six pages.").

###### e.        Redaction Of Privacy Act Covered Statements

Fifth, plaintiff also unsuccessfully attempted to admit the unredacted request mast statements of Lance Corporal H[* * *] and Staff Sgt. R[* * *] to show bias during the general court-martial.  *Id.* at 4009-15; AR Tabs 41, 43-44 (providing the unredacted statements as defense exhibits D, E, and H); *see also* Am. Compl. at ¶ 48(e).  During the general court-martial proceedings, the military judge requested that plaintiff use redacted versions of these request mast statements that do not include certain personal identifiable information and information about "other people in the command" that were irrelevant to plaintiff's general court-martial. AR Tab 155.1 at 4010, 4015-16.  And so, the military judge admitted the redacted versions of these statements into evidence.  AR Tab 17 at 443; *see generally* AR Tabs 34-35 (providing defense exhibits OO and PP).

###### f.        Relevance Objections

Sixth, plaintiff faced relevance objections to his questioning regarding an interview conducted by NCIS investigator SA Jeffrey Norton involving Gunnery Sgt. Cesar Villegas.  Am. Compl. at ¶¶ 48(g)-(h).  During the pre-trial hearing regarding plaintiff's motion to dismiss for UCI, plaintiff's counsel questioned SA Norton regarding Gunnery Sgt. Villegas.  AR Tab 155.1 at 3521-30.  The military judge sustained a relevance objection to request that plaintiff's questioning stay within the topic of UCI.  *Id.* at 3529; *see also id.* at 3525-27.

###### g.        Closing Argument

Lastly, plaintiff objected to several matters related to the closing arguments.  Am. Compl. at ¶48(i)-(k).  During the closing arguments, the military judge interrupted plaintiff's counsel on three occasions in response to objections by the government and/or to clarify the facts in evidence.  AR Tab 155.1 at 4192-209.  First, after the prosecution objected to counsel for plaintiff's statement that a witness "got up on that stand, looked you in the eye, and they lied to you," the military judge sustained the government's objection to this statement because the "credibility of these witnesses is a matter for these members and not for" defense counsel.  *Id.* at 4193.

Second, plaintiff's counsel argued during closing arguments that plaintiff could not have discredited the Marine Corps and been guilty of maltreatment by making certain statements at a basketball game, because no one at the basketball game was in uniform. *Id.* at 4205. Thereafter, the military judge gave a curative instruction at the close of the argument to the members that:

> There's no requirement for the government to prove that members of the public observed the conduct per se and there's certainly no requirement that people are in uniform. But simply that the conduct was of a nature to bring discredit upon the armed forces.

*Id.* at 4211-12; *see also id.* at 4205.

As a final matter, when plaintiff's counsel referenced the 140-pages of text messages between plaintiff and Staff Sgt. A[* * *], by stating that "[he had] looked at those text messages. You haven't but I have" and later referenced "[a]ll 140 pages" of the text messages, the military judge interrupted and ruled "[t]hat is [an] improper argument." *Id.* at 4191, 4208. The military judge also noted that plaintiff sought to admit only six pages of the 140-pages of text messages during the trial, and the military judge only admitted two pages of text messages into evidence. *Id.* at 4208-09.

At the conclusion of the trial, the members venire found plaintiff guilty of: (1) conspiracy to commit obstruction of justice under UCMJ Article 81; (2) maltreatment of Staff Sgt. A[* * *] under UCMJ 93; (3) indecent language to Staff Sgt. A[* * *] based on the same statement under UCMJ Article 134; and (4) obstruction of justice under UCMJ Article 134. *Id.* at 4261. And so, the members sentenced plaintiff to a reprimand, reduction in paygrade to E-3, and 30-days confinement. *Id.* at 4379.

On February 13, 2015, the Marine Corp Staff Judge Advocate recommended that the Convening Authority approve the sentence adjudged. AR Tab 13 at 313. On February 20, 2015, the Marine Corp Staff Judge Advocate served plaintiff with the recommendation. AR Tab 4 at 12.

### 3.    Plaintiff's Clemency Petition

On March 2, 2015, plaintiff submitted a clemency petition under the Military Rules for Courts-Martial ("R.C.M.") 1105, asserting, among other things, that: (1) a verbatim transcript of

the general court-martial should have been created; (2) he had largely prevailed in demonstrating that the witnesses against him had "coordinated leveling of false allegations of sexual assault;" and (3) the military judge's exclusion of the 140-pages of text messages between plaintiff and Staff Sgt. A[* * *] was improper.  AR Tab 6 at 14-23.  On March 3, 2015, the Staff Judge Advocate forwarded the clemency petition and an addendum to the Convening Authority recommendation that the Convening Authority issue the action implementing the adjudged sentence.  AR Tab 3 at 10-11.  And so, on March 5, 2015, the Convening Authority approved the verdict and sentence.  AR Tab 1 at 6-7 (Art. 65(a) of the UCMJ requires the record to be transmitted to the Judge Advocate General when a service member is found guilty).

### 4.    Plaintiff's District Court Litigation

On July 9, 2015, plaintiff brought a civil action against the witnesses that testified against him at his general court-martial—Staff Sgt. A[* * *], Sgt. E[* * *] P[* * *], Staff Sgt. R[* * *]— and Sgt. K[* * *] J[* * *], in the United States District Court for the Eastern District of Louisiana.  *See West v. Rieth*, 152 F. Supp. 3d 538 (E.D. La. 2015), *aff'd* 705 F. App'x 211, 212 (5th Cir. 2017), *cert. denied* 138 S. Ct. 1546, 1547 (2018).  In the district court litigation, plaintiff alleged that these service members "conspired to lodge false complaints and accusations of sexual harassment and sexual assault against him."  *West v. Rieth*, 152 F. Supp. 3d 538, 541 (E.D. La. 2015), *aff'd*, 705 Fed. App'x 211 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1546, 1547 (2018).  The United States intervened in the case to substitute the United States as the named defendant pursuant to 28 U.S.C. § 2679 (the "Westfall Act.").  *Id.* at 542, 544-46.

The district court held that plaintiff failed to prove that the defendants' conduct was not within the scope of their employment and later denied plaintiff's motion for reconsideration.  *Id.* at 544-46; *West v. Rieth*, No. 15-2512, 2016 WL 952253, at *2 (E.D. La. Mar. 14, 2016).  And so, the district court dismissed the named individual defendants and substituted the United States as the party defendant in this case.  *Rieth*, 152 F. Supp. 3d at 549.  In doing so, the district court noted that "[Mr.] West has not submitted sufficient evidence to meet th[e] burden" to establish that, as a factual matter, the allegations against him were false.  *Id.* at 545.  The United States Court of Appeals for the Fifth Circuit subsequently affirmed the district court's decision to dismiss plaintiff's claims.  *See Rieth*, 705 F. App'x. at 213-14.  On April 16, 2018, the Supreme Court denied plaintiff's petition for certiorari.  *West v. Rieth*, 138 S. Ct. 1546, 1547 (2018).

### 5.      The Article 69(a) Proceedings

On July 18, 2016, plaintiff requested appellate review of his general court-martial sentence and conviction by the Navy's Office of Judge Advocate General, pursuant to UCMJ Article 69(a).  AR Tabs 144-145; s*ee also* 10 U.S.C. § 869.  In that appeal, plaintiff raised 11 challenges, namely, that:  (1) there were missing items from the record of trial; (2) his request for a verbatim transcript of the court-martial proceedings was denied; (3) the Convening Authority issued the action improperly, because it allegedly did so before the Staff Judge Advocate had an opportunity to submit the addendum to its original recommendation related to plaintiff's clemency petition; (4) the military judge improperly excluded the text messages between plaintiff and Staff Sgt. A[* * *]; (5) the military judge gave prejudicial instruction regarding those text messages; (6) the military judge gave improper jury instructions regarding the obstruction of justice charge; (7) there was insufficient evidence to support the obstruction of justice conviction; (8) there were improper instructions during plaintiff's closing argument regarding the indecent language charge; (9) plaintiff met his burden of proof on his motions to dismiss for UCI; (10) the military judge exacerbated UCI by finding many of plaintiff's questions and arguments regarding sexual assault to be irrelevant; and (11) there was new evidence demonstrating UCI.  AR Tab 144 at 2800-08; *see also* AR Tab 145 at 3168-79.

In December 2016, the Navy's Office of Judge Advocate General determined that a verbatim transcript of plaintiff's general court-martial proceedings was necessary to evaluate plaintiff's assignments of error.  AR Tab 147 at 3216.  On February 27, 2017, plaintiff filed a mandamus case against the Navy's Office of Judge Advocate General to prohibit the Navy from preparing a verbatim transcript.  AR Tab 151.1.

On March 29, 2017. the Navy provided plaintiff with a copy of the verbatim transcript of the general court-martial proceedings and advised that plaintiff and his counsel had 10 days to review the transcript.  *See* AR Tab 152 at 3448; AR Tab 153 at 3451.  Shortly thereafter, the district court dismissed plaintiff's mandamus case on April 6, 2017.  AR Tabs 157.9-10.  On May 2, 2017, the Navy informed plaintiff that the verbatim transcript had been authenticated and that the military judge had certified the transcript for addition to the record of trial.  AR Tab 155. Thereafter, on June 9, 2017, the Office of the Judge Advocate General denied plaintiff's Article 69 request for relief.  AR Tab 156.

**B.     Procedural Background**

Plaintiff commenced this Military Pay Action on January 16, 2018.  *See generally* Am.
Compl.  On April 24, 2018, the Court entered a Protective Order in this matter.  *See generally*
Protective Order.

The government filed the administrative record on April 30, 2018.  *See generally* AR.
On May 14, 2018, plaintiff filed motions to supplement the administrative record and to strike
portions of the administrative record.  *See generally* Pl. Mot. to Supp. and Strike AR.  On May
18, 2018, plaintiff filed a supplemental appendix to his motions to supplement and to strike
portions of the administrative record by leave of the Court.  *See generally* Pl. App'x.

On June 1, 2018, the government filed a response and opposition to plaintiff's motions to
supplement and to strike portions of the administrative record.  *See generally* Def. Resp. to Mot.
to Supp. and Strike AR.  On June 8, 2018, plaintiff filed a reply in support of his motions to
supplement and to strike portions of the administrative record.  *See generally* Pl. Reply to Mot.
to Supp. and Strike AR.

On September 7, 2018, the government filed a motion for judgment upon the
administrative record and a motion for summary judgment.  *See generally* Def. Mot.  On October
19, 2018, plaintiff filed a motion for relief from the Protective Order.  *See generally* Pl. Mot. for
Relief.  On November 5, 2018, plaintiff filed a cross-motion for judgment upon the
administrative record and a response in opposition to the government's motion for judgment
upon the administrative record and motion for summary judgment.  *See generally* Pl. Mot.

On December 17, 2018, the government filed a response and opposition to plaintiff's
cross-motion for judgment upon the administrative record and a reply in support of its motion for
judgment upon the administrative record and motion for summary judgment.  *See generally* Def.
Resp.  On February 8, 2019, plaintiff filed a reply in support of his cross-motion for judgment
upon the administrative record.  *See generally* Pl. Reply.

On February 28, 2019, the government filed a response in opposition to plaintiff's motion
for relief from the protective order.  *See generally* Def. Resp. to Mot. for Relief.  On March 15,
2019, plaintiff filed a reply in support of his motion for relief from the protective order.  *See
generally* Pl. Reply to Mot. for Relief.

On April 16, 2019, the Court issued a memorandum opinion and order granting-in-part and denying-in part plaintiff's motions to supplement and to strike portions of the administrative record.  *See generally West v. United States*, 142 Fed. Cl. 717 (2019).  On May 17, 2019, the government supplemented the administrative record.  *See generally* AR.

These matters being fully-briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Jurisdiction And Military Pay Cases

The Military Pay Act is a money-mandating source of law that provides the Court with jurisdiction under the Tucker Act.  *See Bias v. United States*, 131 Fed. Cl. 350, 354 (2017), *aff'd in part and rev'd in part on other grounds*, 722 F. App'x 1009 (Fed. Cir. 2018) (citations omitted) ("[T]he Military Pay Act . . . is a money-mandating source of law that provides the court with jurisdiction."); *see also* 37 U.S.C. § 204.  And so, the United States Court of Appeals for the Federal Circuit has held that the Military Pay Act is typically the applicable money-mandating statute to be invoked in the context of military discharge cases.  *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204.").

The Federal Circuit has also held that, when reviewing challenges to a court-martial conviction, this Court possesses a "'narrow window of collateral attack review'" and a servicemember must "'demonstrate convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process.'"  *Matias v. United States*, 923 F.2d 821, 826 (Fed. Cir. 1990) (quoting *Matias v. United States*, 19 Cl. Ct. 635, 641 (1990), and *Bowling v. United States*, 713 F.2d 1558, 1561 (Fed. Cir. 1983)).  In this regard, "the constitutional claims made must be serious ones to support an exception to the rule of finality." *Bowling*, 713 F.2d at 1561.  And so, absent an allegation of an express constitutional violation, a plaintiff must demonstrate that the court-martial constituted a "constitutionally unfair trial." *United States v. Augenblick*, 393 U.S. 348, 356 (1969).  In this regard, the Supreme Court has held that, "apart from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or

forgotten . . . that the proceeding is more a spectacle or trial by ordeal than a disciplined contest." *Id.* (internal citations omitted).

This Court weighs constitutional claims related to the challenge of court-martial proceedings with the "limited function" of determining "whether the military tribunal gave fair consideration" to each claim. *Matias*, 923 F.2d at 826 (citing *Burns v. Wilson*, 346 U.S. 137, 144 (1953)); *Matias*, 19 Cl. Ct. at 646 ("When an issue has been briefed and argued before a military court, it has received full and fair consideration, even if that court disposes of the claim summarily with a statement that it did not consider the issue meritorious or requiring discussion."). The Court "does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal." *See Flute v. United States*, 535 F.2d 624, 626 (Ct. Cl. 1976). Given this, merely contesting whether the court-martial judge erred or acted contrary to law is insufficient, if the challenge does "not rise to the constitutional magnitude required for review." *Tindle v. United States*, 56 Fed. Cl. 337, 342 (2003). And so, the Court may review court-martial convictions only where the alleged infirmities at the court-martial rise to a constitutional level. *Flute*, 535 F.2d at 626.

### B.    RCFC 56

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if it could "affect the outcome of the suit under the governing law." *Id.* The mere existence of an alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment if there is no genuine issue of material fact. *Id.* at 247-48.

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*, 436 U.S. 748, 756, 98 S. Ct. 2081, 56 L. Ed. 2d 677 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . .") (citations omitted).  The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.  The same standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subs. v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C.     RCFC 52.1

Unlike a summary judgment motion under RCFC 56, the existence of genuine issues of material fact do not preclude a grant of judgment upon the administrative record under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011).  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006); *see also Bannum v. United States*, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005).

### D.     Collateral Estoppel And Justiciability

The Federal Circuit has recognized that "[t]he doctrine of res judicata involves the related concepts of claim preclusion and issue preclusion." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1267 (Fed. Cir. 2008).  The doctrine of collateral estoppel—or issue preclusion— protects litigants from the burden of relitigating an identical issue with the same party and promotes judicial economy by preventing needless litigation. *Parklane Hosiery, Inc. v. Shore,*

14

439 U.S. 322, 327 (1979); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-329 (1971).  A party asking the Court to apply collateral estoppel must establish that:  (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.  *Dana v. E.S. Originals, Inc.*, 342 F.3d. 1320, 1323 (Fed. Cir. 2003) (internal quotation marks omitted) (quoting *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998)); *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001) (citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365-66 (Fed. Cir. 2000)).

In addition, this Court has held that a claim must be justiciable to survive a motion to dismiss.  *See Houghtling v. United States*, 114 Fed. Cl. 149, 156–57 (2013).  In this regard, the United States Supreme Court has held that justiciability depends upon "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded."  *Baker v. Carr*, 369 U.S. 186, 198 (1962); *see also Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993).  And so, a controversy is justiciable only if "it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'"  *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C. Cir. 1958)); *see also Antonellis v. United States*, 723 F.3d 1328, 1334 (Fed. Cir. 2013); *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995).

The question of justiciability is frequently at issue when courts review military activities, and courts have often held that decisions made by the military are "beyond the institutional competence of courts to review."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("Because 'decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments,' the substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review.") (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)); *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953) ("[J]udges are not given the task of running the Army."); *see also Murphy*, 993 F.2d at 872; *Voge*, 844 F.2d at 780.  But, even when the merits of a military personnel decision are nonjusticiable, the process by which the decision

has been made may be subject to judicial review.  *Adkins*, 68 F.3d at 1323 ("[A] challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy.") (emphasis original); *Murphy*, 993 F.2d at 873.  And so, if the military chooses to introduce its own procedural regulations, the Court may review any violations of such regulations even if the underlying decision is nonjusticiable.  *Murphy*, 993 F.2d at 873.  In such circumstances, the Court "merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard."  *Id.*

## IV.   LEGAL ANALYSIS

The parties have filed several motions that require resolution by the Court.  First, the government seeks summary judgment in its favor on the issue of whether certain witnesses at plaintiff's general court-martial trial conspired to falsely accuse him of sexual assault and sexual harassment, upon the ground that plaintiff is collaterally estopped from relitigating this issue.  Def. Mot. 18-22.  The parties have also filed cross-motions for judgment upon the administrative record on the issues of: (1) whether the United States Marine Corps committed errors during plaintiff's general court-martial and post-trial proceedings, that would warrant vacating plaintiff's general court-martial conviction and sentence; and (2) whether this matter should be remanded to the Navy's Judge Advocate General.  *See generally* Pl. Mot.; Def. Mot.  Lastly, plaintiff has moved for relief from the Protective Order entered in this matter on April 24, 2018.  *See generally* Pl. Mot. for Relief.

For the reasons set forth below, plaintiff is collaterally estopped from relitigating whether certain witnesses falsely accused him of sexual assault and sexual harassment and plaintiff has not shown that his general court-martial and post-trial proceedings were fundamentally unfair.  And so, the Court:  (1) **GRANTS** the government's motion for summary judgment; (2) **GRANTS** the government's motion for judgment upon the administrative record; (3) **DENIES** plaintiff's cross-motion for judgment upon the administrative record; (4) **DENIES** plaintiff's motion for relief from protective order; and (5) **DISMISSES** the complaint.

### A.   Plaintiff Is Precluded From Re-Litigating Whether Certain Witnesses Falsely Accused Him During The Court-Martial Proceedings

As an initial matter, while not dispositive of this case, the undisputed material facts in this case make clear that plaintiff is precluded from re-litigating the issue of whether certain

witnesses at his general court-martial conspired to falsely accuse him of sexual assault and sexual harassment.  And so, the Court **GRANTS** the government's motion for summary judgment with respect to this issue.  RCFC 56.

In its motion for summary judgment, the government persuasively argues that plaintiff is precluded from litigating the issue of whether certain servicemembers coordinated to falsely accuse him of sexual assault and sexual harassment, because plaintiff previously litigated this issue before the United States District Court for the Eastern District of Louisiana.  Def. Mot. at 18-19.  It is well-established that the doctrine of collateral estoppel—or issue preclusion— protects litigants from the burden of relitigating an identical issue with the same party and promotes judicial economy by preventing needless litigation.  *Parklane Hosiery, Inc. v. Shore*, 439 U.S. 322, 331 (1979); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328- 329 (1971).  To establish that plaintiff is collaterally estopped from relitigating whether certain witnesses conspired to falsely accuse him of sexual assault and sexual harassment, the government must show that:  (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the prior proceeding. *Dana v. E.S. Originals, Inc*., 342 F.3d. 1320, 1323 (Fed. Cir. 2003) (internal quotation marks omitted) (quoting *Pleming v. Universal-Rundle Corp*., 142 F.3d 1354, 1359 (11th Cir. 1998)); *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001) (citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365-66 (Fed. Cir. 2000)).  The government has shown that each of these elements is satisfied here.

First, there can be no genuine dispute that the issue of whether certain witnesses conspired to falsely accuse plaintiff of sexual assault and sexual harassment during his general court-martial is identical to the issue involved in plaintiff's prior litigation before the United States District Court of the Eastern District of Louisiana.  In the district court litigation, plaintiff alleged that four servicemembers—Staff Sgt. A[* * *], Sgt. P[* * *], Staff Sgt. R[* * *], and Sgt. J[* * *]— "conspired to lodge false complaints and accusations of sexual harassment and sexual assault against him."  *Rieth*, 152 F. Supp. 3d at 541.  The amended complaint in this action similarly alleges that these same four individuals made "false sexual assault claims" against plaintiff during his general court-martial.  Am. Compl. at ¶ 42(b).  A review of the docket for

plaintiff's district court litigation also shows that the issue of whether the aforementioned servicemembers conspired to falsely accuse plaintiff of sexual assault and sexual harassment was fully briefed by the parties to that case and that the district court determined that plaintiff failed to show that the allegations lodged against him were false. *Rieth*, 152 F. Supp. 3d at 545. Given this, the undisputed material facts show that the issue of whether certain servicemembers conspired to falsely accuse plaintiff of sexual assault and sexual harassment is identical to the issue that plaintiff previously litigated before the district court. *Corrigan v. United States*, 82 Fed. Cl. 301, 307 (2008) (quoting *United States v. Moser*, 266 U.S. 236, 241 (1924)) (explaining that, to determine whether the issue is identical, this Court must decide "'whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action.'").

Second, the undisputed material facts also make clear that the parties to the district court litigation actually litigated the issue of whether certain servicemembers conspired to falsely accuse plaintiff of sexual assault and sexual harassment. As discussed above, plaintiff alleged in the district court litigation that Staff Sgt. A[* * *], Sgt. P[* * *], Staff Sgt. R[* * *] and Sgt. J[* * *] "conspired to lodge false complaints and accusations of sexual harassment and sexual assault against him." *Rieth*, 152 F. Supp. 3d at 541. The government addressed this issue in its motion to dismiss and to substitute the United States as the defendant in that action. *Id.* at 542. A review of the district court's decision on the government's motion also shows that the issue of whether certain servicemembers conspired to falsely accuse plaintiff of sexual assault and sexual harassment was resolved by the district court. Notably, the district court held that "[Mr.] West has the burden to establish that, as a factual matter, the allegations against him were false" and the district court ultimately concluded that plaintiff "has not . . . [met] this burden." *Id.* at 545.

Plaintiff's argument that this issue was not actually litigated before the district court is also misguided. Pl. Mot. at 73-74. While plaintiff correctly observes that the district court did not conduct an evidentiary hearing before granting the government's motion to dismiss and to substitute, it is well-established that an issue can be litigated and decided by a court on a dispositive motion without the need to hold an evidentiary hearing. *See, e.g.*, *Stephen Slesinger, Inc. v. Disney Enters., Inc.*, 702 F.3d 640, 645-46 (Fed. Cir. 2012) (affirming the Trademark Trial and Appeal Board's dismissal for collateral estoppel based in reliance on a district court order for summary judgment in the previous court action). The docket for plaintiff's district

court litigation also shows that the district court dismissed plaintiff's *Bivens* complaint against the accused servicemembers with prejudice, again, making clear that the issue of whether these servicemembers falsely accused plaintiff of sexual assault and sexual harassment was actually litigated before the district court. *West v. Rieth*, No. 15-2512, 2016 WL 3459883, at *7 (E.D. La. June 24, 2016). Given this, the Court concludes that the second element of issue preclusion has also been satisfied in this case. *Corrigan*, 82 Fed. Cl. at 309 (holding that an issue is actually litigated if the issue was: (1) appropriately raised, by the pleadings or otherwise; (2) submitted for determination; and (3) determined by the court).

The government has also shown that the district court's determination regarding whether certain servicemembers conspired to falsely accuse plaintiff of sexual assault and sexual harassment was a critical and necessary part of the court's judgment in the district court litigation. Plaintiff correctly argues that the district court addressed issues related to scope of employment and certification under the Westfall Act during the district court litigation. Pl. Mot. at 70; *see Rieth*, 152 F. Supp. 3d at 546. But, the district court also specifically addressed and determined the veracity of the accusers' sexual assault and sexual harassment claims against plaintiff, before reaching a decision regarding the Westfall Act certification. *Rieth*, 152 F. Supp. 3d at 544 ("The Certification and the Alleged Falsity of the Allegations"). Notably, the district court held that, "to challenge the certification, . . . [Mr.] West has the burden to establish that, as a factual matter, the allegations against him were false." *Id.* at 545 (emphasis omitted). Given this, the Court agrees with the government that the issue of whether certain servicemembers conspired to falsely accuse plaintiff of sexual assault and sexual harassment was a critical and necessary part of the district court's decision.

Lastly, the undisputed material facts also make clear that plaintiff had a full and fair opportunity to litigate the issue of whether certain servicemembers conspired to falsely accuse him of sexual assault and sexual harassment during the district court litigation. Plaintiff and the government fully briefed this issue in connection with the government's motion to dismiss and to substitute. *Id.* at 542 n.11. Plaintiff was also represented by counsel during the district court litigation and he currently retains the same counsel in this case. *Id.* at 541. In addition, plaintiff fails to show that he suffered any significant procedural limitations during the district court litigation. Pl. Mot. at 74-76. And so, the final element of collateral estoppel—that plaintiff was afforded a full and fair opportunity to litigate the issue—has also been satisfied in this case.

19

*Corrigan*, 82 Fed. Cl. at 311 (holding that, to determine whether plaintiff has had a "full and fair" opportunity to litigate the issue, the Court must look at: (1) whether there were significant procedural limitations in the prior proceeding; (2) whether the party had an incentive to litigate fully the issue; and (3) whether effective litigation was limited by the nature or relationship of the parties).

Because the undisputed material facts in this case make clear that plaintiff is collaterally estopped from relitigating the issue of whether certain witnesses at his general court-martial trial conspired to falsely accuse him of sexual assault and sexual harassment, the Court **GRANTS** the government's motion for summary judgment on this issue. RCFC 56.

> **B.      Plaintiff Has Not Shown That Any Of The**
> **Alleged Errors During The Court-Martial And**
> **Post-Trial Proceedings Constitute Such A Deprivation Of**
> **Fundamental Fairness As To Impair His Constitutional Due Process Rights**

Turning to the merits of the parties' cross-motions for judgment upon the administrative record, the record evidence in this case shows that any errors that occurred during plaintiff's general court-martial and post-trial proceedings did not constitute such a deprivation of fundamental fairness as to impair plaintiff's constitutional due process rights. And so, the Court **GRANTS** the government's motion for judgment upon the administrative record and **DENIES** plaintiff's cross-motion for judgment upon the administrative record on this issue. RCFC 52.1.

In his cross-motion for judgment upon the administrative record, plaintiff identifies several alleged errors during his general court-martial and post-trial proceedings that he contends show that these proceedings involved such a deprivation of fundamental fairness as to impair his due process rights. Pl. Mot. at 43-54. Specifically, plaintiff alleges: (1) pervasive witness tampering; (2) concealment of exculpatory evidence; (3) the "obdurate refusal" of the military judge to acknowledge an obvious UCI; (4) the articulation of an erroneous legal standard for evaluating UCI; (5) prejudicial comments during closing arguments; (6) the charging of a frivolous case; and (7) the existence of an apparent attempt to prevent review of plaintiff's UCI claim. Pl. Mot. at 43-53. Plaintiff also alleges that the Marine Corps and the Navy failed to give full and fair consideration to his UCI claims during the post-trial review and Article 69 appeal process and that the Navy failed to afford him appellate review by the Navy-Marine Corps Court of Criminal Appeals. *Id*. at 54-61. And so, plaintiff requests that: (1) the Court vacate the

findings and sentence of his general court-martial; (2) placement in retirement status; (3) the correction of his military records, back pay and other benefits; or, (4) alternatively, that the Court remand this motion to the Navy Office of the Judge Advocate General. *Id.* at 76; Am. Compl. at Prayer for Relief.

The government counters in its motion for judgment upon the administrative record that the Court should deny plaintiff's claims because plaintiff has not demonstrated that any of the errors alleged in this case constitute such a deprivation of fundamental fairness as to impair his constitutional due process rights. Def. Mot at 22-38. The government also argues that plaintiff's request for reinstatement in the military is non-justiciable and that plaintiff's claim for back pay must be limited to the term of his enlistment. *Id.* at 39-40. And so, the government requests that the Court deny all of plaintiff's claims and dismiss this matter. *Id*. at 40.

It is well-established that this Court weighs constitutional claims related to plaintiff's challenge of his general court-martial and post-trial proceedings with the "limited function" of determining "whether the military tribunal gave fair consideration" to each claim. *Matias*, 923 F.2d at 826 (citing *Burns v. Wilson*, 346 U.S. 137, 144 (1953)); *Matias*, 19 Cl. Ct. at 646. In so doing, the Court "does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal." *See Flute v. United States*, 535 F.2d 624, 626 (Ct. Cl. 1976). And so, plaintiff must show that that the alleged infirmities during his general court-martial and post-trial proceedings rise to a constitutional level for the Court to review his court-martial sentence and conviction. *Id.* For the reasons set forth below, plaintiff makes no such showing in this case.

### 1. Plaintiff Received Full And Fair Consideration Of His Motion To Dismiss For Unlawful Command Influence

As an initial matter, the administrative record in this matter shows that the Marine Corps gave full and fair consideration of plaintiff's motion to dismiss the general court-martial due to an actual or apparent UCI. *See Matias*, 923 F.2d at 826.

In his motion for judgment upon the administrative record, plaintiff argues that the presence of UCI during his general court-martial proceedings constitutes "fundamental errors" in those proceedings that warrant vacating his conviction for seven reasons. Pl. Mot. at 43-54. Specifically, plaintiff argues that: (1) the Marine Corps engaged in witness tampering; (2) the

Marine Corps concealed exculpatory evidence; (3) the military judge refused to acknowledge an obvious UCI; (4) the military judge articulated an erroneous legal standard for UCI; (5) there were prejudicial comments during the closing arguments; (6) the Marine Corps filed a frivolous case against plaintiff; and (7) there was an apparent attempt to prevent review of plaintiff's UCI claims. *Id.* But, as shown below, none of the errors alleged by plaintiff related to his motion to dismiss for UCI are substantiated by the evidentiary record in this case. And so, the Court must deny this claim.

### a.       Plaintiff Has Not Shown Evidence Of Witness Tampering

First, plaintiff's claim that the administrative record "is replete with evidence of witness tampering" and witnesses "being coerced to testify falsely against [him]" is belied by the record evidence. *Id.* at 45. Plaintiff argues that witness tampering occurred in connection with his general court-martial proceedings because two of the witnesses against him —Staff Sgt. A[* * *] and Gunnery Sgt. Villegas— "were potential targets of [an] obstruction of justice investigation[]." *Id.* Plaintiff also argues that Staff Sgt. A[* * *] met with the Marine Corps SAPR office before making formal allegations of sexual harassment and obstruction of justice against plaintiff. *Id.*

To support these allegations, plaintiff points to, among other things, the testimony and witness statements of Staff Sgt. A[* * *] and Gunnery Sgt. Villegas during the NCIS's investigation of plaintiff's conduct and during the general court-martial trial. *Id.*; *see* AR Tab 59 at 1246-50 (Staff Sgt. A[* * *] testimony); AR Tab 85 at 2021-22 (Staff Sgt. A[* * *] statement to NCIS); AR 85 at 2032 (Gunnery Sgt. Villegas statement to NCIS). But, plaintiff's allegations of witness tampering are not substantiated by this evidence.

A careful review of the record evidence does not reveal any evidence to support plaintiff's claim that the Marine Corps tampered with any of the witnesses that testified against plaintiff during the general court-martial proceedings. *See* AR Tab 52 at 1066-67 (Lance Corporal H[* * *] explaining her interactions with Sgt. P[* * *] and Staff Sgt. A[* * *] after the Halloween incident occurred); AR Tab 59 at 1246-50 (Staff Sgt. A[* * *] detailing her conversations with the SAPR office); AR Tab 155.1 at 3528-30 (SA Norton explaining that Gunnery Sgt. Villegas was not under investigation for obstruction of justice). Rather, the witness testimony cited by plaintiff shows that Staff Sgt. A[* * *] and Gunnery Sgt. Villegas

provided voluntary and truthful statements to NCIS in connection with the investigation of the sexual assault and sexual harassment claims lodged against plaintiff. *See, e.g.*, AR Tab 85 at 2032; *see generally* AR Tab 56.

Plaintiff's allegation that witnesses were "coerced into testifying falsely against [him]" during the general court-martial proceedings is also unsubstantiated. Pl. Mot. at 45. As discussed above, the United States District Court for the Eastern District of Louisiana has previously determined that plaintiff failed to show that any of the witnesses against him during the general court-martial proceedings falsely accused him of sexual assault and sexual harassment. *Rieth*, 152 F. Supp. 3d at 545. And so, plaintiff has not shown that witness tampering occurred in connection with his general court-martial proceedings.

### b.   Plaintiff Has Not Shown That The Marine Corps Concealed Exculpatory Evidence

Plaintiff's allegations that the NCIS agents involved in the investigation that led to his general court-martial concealed witness statements that would have exonerated him is similarly unsubstantiated. Pl. Mot. at 46. Specifically, plaintiff alleges that NCIS SA Jeffrey Norton "falsely attributed inculpatory statements [regarding the sexual assault and sexual harassment allegations against plaintiff] to two . . . witnesses, Jacob Coby and Jessica Geddies." *Id.* But, a review of the statements and trial testimony of these witnesses shows that Mr. Coby and Ms. Geddies provided generally consistent testimony regarding whether they saw plaintiff dancing with one of his accusers. *Compare* AR Tab 144.13 at 3055 (SA Norton interview summary with Mr. Coby) *with* AR Tab 17.2 at 421-23 (Summary of Mr. Coby's court-martial testimony) *and* AR Tab 64 at 1284 (Mr. Coby's statement to defense counsel); *compare* AR Tab 144.14 at 3056 (SA Norton interview summary with Ms. Geddies), *with* AR Tab 64 at 1283, (Ms. Geddies' statement to defense counsel) *and* AR Tab 17.2 at 434-36 (Summary of Ms. Geddies court-martial testimony), AR Tab 155.1 at 4057 ("I don't recall making th[e] statement [that I observed [plaintiff trying to dance with H[* * *]].").

Plaintiff's claim that the Marine Forces Reserve prosecutor improperly blocked SA Norton from re-interviewing another witness —Mr. James Rieth— regarding certain text messages between himself and plaintiff similarly lacks evidentiary support. Pl. Mot. at 46. The record evidence shows that, during the general court martial proceedings, SA Norton testified

that he was told by a supervisor that it was "not necessary" for him to re-interview Mr. Rieth regarding the subject text messages.  AR Tab 144.12 at 3040-41; AR Tab 155.1 at 3524-25.  But, SA Norton and the other special agent involved in the NCIS investigation also testified that they did not feel any pressure from the Marine Corps to conduct the investigation in a certain manner. AR Tab 155.1 at 3530, 3535-36.

Plaintiff's claim that the SAPR office prevented Staff Sgt. A[* * *] from being re-interviewed by NCIS regarding the text messages between herself and plaintiff is also unsubstantiated.  Pl. Mot. at 46.  The administrative record shows that SA Norton testified that he did pursue another interview with Staff Sgt. A[* * *] because she declined his requests for a second interview.  AR Tab 155.1 at 4070-1 ("If they declined to be interviewed, they declined to be interviewed.  I mean the Court can order them to testify.").  A review of the witness statements that plaintiff identifies as being exculpatory and concealed by the Marine Corps also reveals that these statements pertain to charges for which plaintiff was found not guilty.[2]  AR Tab 1 at 2-4; AR Tabs 64-65; AR Tab 144.13 at 3055-56.  Given this, the Court finds it difficult to conclude that the alleged concealment of these statements could have led to a "fundamental deprivation" of plaintiff's due process rights.  *Matias*, 923 F.2d at 826.  And so, plaintiff has not shown that the Marine Corps concealed evidence during his general court-martial proceedings.

### c.    Plaintiff Has Not Shown That The Marine Corps' Case Was Frivolous

The Court is also not persuaded by plaintiff's argument that his general court-martial involved a frivolous case.  Pl. Mot. at 52-53.  In his cross-motion, plaintiff argues that the reason the sexual assault and sexual harassment charges brought against him were dropped by the Marine Corps was to avoid the consequences of his motion to dismiss for UCI.  *Id.*  But, as the government observes in its motion for judgment upon the administrative record, the Marine Corps' decision to drop the sexual assault and sexual harassment charges brought against plaintiff was a prosecution decision that fell within the discretion of the military prosecutor.  Def. Resp. at 17-18 (citing *United States v. Argo*, 46 M.J. 454, 463 (C.A.A.F 1997)).  The record

---

[2] Plaintiff correctly observes that the administrative record reveals some inconsistencies in the statements given by Jacob Coby and Jessica Geddies, such as whether or not Ms. Geddies saw plaintiff and Lance Corporal H[* * *] dancing together.  *Compare* AR Tab 144.13 at 3055-56, *with* AR Tabs 64-65.  But, the Court does not find these inconsistencies to show that the Marine Corps tampered with these witnesses.

evidence also makes clear that the case brought against plaintiff was not frivolous.  While plaintiff correctly observes that he was found not guilty of the majority of the charges lodged against him during the general court-martial proceedings, it is undisputed that plaintiff was convicted of service discrediting conduct related to comments that he made at a basketball game and certain text messages that plaintiff sent to Staff Sgt. A[* * *].  AR Tab 1 at 3-5.  Plaintiff was also convicted of attempting to obstruct justice in connection with the investigation that led to his general court-martial.  *Id.*  And so, plaintiff simply has not shown that the charges brought against him were frivolous.

> ### d.      The Military Judge Applied The Correct UCI Legal Standard

Plaintiff's claim that a fundamental error occurred during the general court-martial proceedings because the military judge applied the wrong legal standard to resolve his motion to dismiss for UCI is equally unavailing.  Pl. Mot. at 47-48.  To support this claim, plaintiff points to the following statement made by the military judge during the general court-martial proceedings:

> And that whenever I or any court these days consider UCI motions, we are really focused on three factors:  Was the CA acting in response to some type of pressures from superiors and acting with something other than a completely pure heart?  Of course, that's my language.  That's certainly not case law language.  Secondly, is there any evidence at all that access to witnesses has been inhibited or that witnesses are, because of command influence, unwilling to testify for or cooperate with the defense?  And, thirdly, are the members free from bias?

AR Tab 155.1 at 3520; Pl. Mot. at 48.

As plaintiff and the government both acknowledge, the proper legal standard for evaluating plaintiff's motion to dismiss for UCI is that plaintiff must meet an initial showing of UCI and then the burden shifts to the government to refute the UCI beyond a reasonable doubt.  *United States v. Lewis*, 63 M.J. 405, 413 (C.A.A.F. 2006) (citing *United States v. Biagese*, 50 M.J. 143, 150-51 (C.A.A.F. 1999)); Def. Resp. at 8-13; *see* Pl. Mot. at 47-48.  And so, to successfully pursue a UCI claim, plaintiff must show "more than mere 'command influence in the air' or speculation."  *United States v. Harvey*, 64 M.J. 13, 18 (C.A.A.F. 2006) (quoting *United States v. Johnson*, 54 M.J. 32, 34 (C.A.A.F. 2000)).

In this case, the record evidence shows the military judge correctly applied the aforementioned legal standard and decided to deny plaintiff's motion to dismiss for UCI. The military judge determined that plaintiff "failed to meet the threshold for raising [the UCI issue], which is. . . more than mere allegation or speculation under *Biagese*, 50 M.J. 143, . . ." AR Tab 155.1 at 3541. And so, the military judge concluded that "[the] defense has failed to meet their initial *Biagese* burden [in this case]" and the military judge denied plaintiff's motion to dismiss for UCI. *Id.* at 3541-42. The Court finds no legal error in this decision.

### e.    The Military Judge Did Not Refuse To Recognize UCI

Plaintiff's argument that he has been prejudiced by the military judge's "obdurate refusal" to acknowledge an actual or apparent UCI in connection with his general court-martial also lacks persuasion. Pl. Mot. at 46-47. To support this argument, plaintiff argues that he presented "uncontested evidence" of UCI during the general court-martial proceedings and that the military judge improperly refused to acknowledge this evidence. *Id.* at 47. But, the Court agrees with the government that plaintiff's claim raises a question of fact regarding the evidence that was before the military judge and that such questions of fact cannot be resolved by this Court. *See Matias*, 923 F.2d at 826 ("[Q]uestions of fact resolved by military courts are not subject to collateral attack."); Def. Resp. at 13.

Because the administrative record makes clear that plaintiff received full and fair consideration of his motion to dismiss for UCI during the general court-martial proceedings, the Court will not set aside his general court-martial sentence and conviction based upon an alleged or apparent UCI. *Matias*, 923 F.2d at 826.

### f.    Plaintiff Has Not Shown That The
### Military Judge Erred During The Closing Arguments

Plaintiff's claim that fundamental errors permeated his general court-martial proceedings, because the military judge made prejudicial comments during the closing arguments, is also unsubstantiated by the record evidence. Pl. Mot. at 48-51. In this regard, plaintiff argues that the military judge improperly admonished his counsel for:  (1) asserting that witnesses lied to the jury; (2) making inferences related to certain text messages between plaintiff and Staff Sgt. A[* * *]; and (3) arguing plaintiff could not have discredited the Marine Corps because he was not in uniform. *Id.*; Am. Compl. at ¶ 48(i)-(k). But, again, the record evidence neither supports

plaintiff's claims, nor demonstrates that the general court-martial proceedings were fundamentally unfair. Most significantly, courts have long recognized that an "erroneous instruction does not deprive the accused of a constitutionally fair trial." *See e.g., Herring v. New York*, 422 U.S. 853, 862 (1975). And so, to the extent that the military judge erred in admonishing plaintiff's counsel, these errors do not constitute a deprivation of plaintiff's due process rights. It is also well-established that military judges have "broad discretion" in controlling the scope of closing summations. *Flute*, 535 F.2d at 626-27. And so, again, the errors alleged by plaintiff simply do not rise to the level of rendering his general court-martial proceedings fundamentally unfair.[3]

> **g.    Plaintiff Has Not Shown That The Marine Corps Attempted To Prevent Review Of His UCI Claim**

Lastly, plaintiff's claim that the Marine Corps attempted to prevent the review of his UCI claim during the clemency petition proceedings is equally unfounded. Pl. Mot. at 53-54. Plaintiff correctly observes that the summarized transcript of his general court-martial proceedings only briefly mentions his UCI claim and that the record of trial before the Staff Judge Advocate during the clemency process did not contain the briefs relevant to his motion to dismiss for UCI. *Id.* But, the Military Rules for Courts-Martial do not require that the Convening Authority consider the record of trial before acting on a plaintiff's clemency petition. R.C.M. 1109(d)(3)(B). And so, the Court agrees with the government that any errors contained in the record of trial for the general court-martial proceedings would not, alone, render the proceedings related to plaintiff's clemency petition fundamentally unfair.[4] *See* Def. Mot. at 36.

Indeed, at bottom, the administrative record in this matter shows that that the errors alleged by plaintiff related to his motion to dismiss the general court-martial proceedings for UCI

---

[3] The record evidence shows that the military judge followed the commentary for the Military Rules for Courts-Martial in admonishing plaintiff's counsel for asserting that certain witnesses lied to the jury. The commentary provides that counsel should not express a personal belief or opinion as to the truth or falsity of any testimony. Def. Mot. at 33-34; R.C.M. 919(b) cmt. (2016).

[4] While plaintiff also correctly observes that the digital copy of the record of trial for his general court-martial proceedings did not contain the briefs related to his motion to dismiss for UCI, the record evidence shows that these documents were attached to his clemency petition and considered by the Convening Authority. Pl. Mot. at 53. Def. Mot. at 36; *see generally* AR Tab 6 at 202-287. The record evidence also shows that the briefs related to plaintiff's motion to dismiss for UCI were attached to plaintiff's Article 69(a) appeal. AR Tabs 144-144.11.

are largely unsubstantiated and that the Marine Corps and the Navy afforded plaintiff's UCI claim full and fair consideration. Given this, plaintiff has not shown that his general court-martial proceedings were fundamentally unfair due to an actual or apparent unlawful command influence. And so, the Court **GRANTS** the government's motion for judgment on the administrative record and **DENIES** plaintiff's cross-motion for judgment on the administrative record on this issue.

### 2. The Other Errors Alleged By Plaintiff Do Not Show That His General Court-Martial Was Fundamentally Unfair

The administrative record also makes clear that the four remaining errors that plaintiff alleges occurred during his general court-martial proceedings do not show that these proceedings were fundamentally unfair. Def. Mot. at 25-31; *see also* Am. Compl. at ¶¶ 48(a), (c)-(e), (g), (h).

First, while not addressed in plaintiff's cross-motion for judgment upon the administrative record, the government persuasively argues that plaintiff received full and fair consideration of his motion to suppress evidence regarding certain text messages between plaintiff and Master Gunnery Sgt. Thomas. Def. Mot. at 25-27. Plaintiff alleges in the complaint that the military judge's decision to deny this motion was a prejudicial ruling. Am. Compl. at ¶ 48(a); *see also* AR Tab 144.8. But, the record evidence shows that the military judge afforded plaintiff full and fair consideration of his motion to suppress evidence during the general court-martial proceedings. Notably, the parties to the general court-martial proceedings fully briefed plaintiff's motion to suppress evidence and the military judge held an Article 39(a) hearing on plaintiff's motion before denying the motion. AR Tab 155.1 at 3589; Mil. R. Evid. 311(c)(2); *see generally* AR Tabs 93, 106, 144.8. The Court appreciates that plaintiff disagrees with the military judge's decision to deny this motion. But, plaintiff has not shown how he has been prejudiced by this decision. *See generally* Pl. Mot. And so, record evidence does not support plaintiff's claim. *Matias*, 923 F.2d at 826.

Plaintiff also has not shown that he has been prejudiced by the exclusion of certain *voir dire* questions related to sexual assault and sexual harassment during the general court-martial proceedings. Am. Compl. at ¶ 48(c); Def. Mot. at 27. The administrative record substantiates plaintiff's claim that the military judge excluded some of his *voir dire* questions during the general court-martial proceedings. AR Tab 155.1 at 3611-14. But, the administrative record

also makes clear that the military judge took steps to ensure that plaintiff was not prejudiced during the *voir dire* process. Notably, the record evidence shows that that the military judge: (1) discussed which *voir dire* questions would be allowed with counsel for both parties; (2) discussed the Marine Corps Heritage Brief, which addresses the issue of sexual assault within the Marine Corps, with the prospective members venire; and (3) also advised the prospective members venire that plaintiff was "presumed innocent" despite the sexual nature of the charges brought against him. *Id.* at 3611-14, 3637-3639; *see also id.* at 3628, 3635, 4159. In addition, the administrative record makes clear that plaintiff has been afforded a full and fair opportunity to pursue his objections to the military judge's decision to exclude some of his *voir dire* questions, because plaintiff raised this claim during his unsuccessful Article 69(a) appeal. AR Tab 144 at 2806; AR Tab 156 at 4383. Given this, plaintiff has not shown that the *voir dire* process during his general court-martial involved "a clear abuse of discretion." *United States v. Smith*, 27 M.J. 25, 28 (C.M.A. 1988) (quoting *United States v. Parker*, 19 C.M.R. 400, 406 (C.M.A. 1955)) (emphasis removed) (explaining that courts have recognized that "wide discretion is vested in trial judges as to questions which must be answered by jurors on *voir dire*.").

Plaintiff's claim that he has been prejudiced by the military judge's decision to not admit all of the text messages between himself and Staff Sgt. A[* * *] into evidence during the general court-martial proceedings is equally unavailing. Am. Compl. at ¶ 48(d). Even if the military judge erred in this regard, the "mere error in admitting or excluding evidence does not make a court-martial constitutionally unfair." *Flute*, 535 F.2d at 627. The administrative record also makes clear that the military judge held a hearing on this issue and that plaintiff raised an objection to the exclusion of the subject text messages in connection with his unsuccessful clemency petition and Article 69(a) appeal. AR Tab 155.1 at 4016-23; *see* AR Tab 6 at 20; AR Tab 144 at 2802; AR Tab 156 at 4383. And so, again, the evidentiary record shows that plaintiff has had a full and fair opportunity to challenge the exclusion of the subject text messages and that plaintiff has not shown that he has been prejudiced by the exclusion of this evidence.

Lastly, plaintiff's challenges to the exclusion of the entire text of Staff Sgt. C[* * *] R[* * *]'s request mast application and to certain comments made by the military judge during the general court-martial proceedings are also unfounded. Am. Compl. at ¶ 48(e), (g)-(h). As discussed above, even if plaintiff is correct in arguing that the military judge erred by

excluding Staff Sgt. C[* * *] R[* * *]'s request mast application, such an error does not render plaintiff's general court-martial proceedings constitutionally unfair. *Flute*, 535 F.2d at 627. The record evidence also shows that plaintiff has had a full and fair opportunity to pursue his objection to certain comments made by the military judge during the general court-martial proceedings in connection with his unsuccessful Article 69(a) appeal. AR Tab 145 at 3166; AR Tab 156 at 4383. And so, plaintiff has not shown that he has been prejudiced by these alleged errors. [5] AR Tab 145 at 3166; AR Tab 156 at 4383.

Because plaintiff has not shown that any of the aforementioned alleged errors during his general court-martial proceeding constitute such a deprivation of fundamental fairness as to impede his constitutional due process rights, the Court **GRANTS** the government's motion for judgment upon the administrative record and **DENIES** plaintiff's cross-motion for judgment upon the administrative record with respect to these issues. *Matias*, 923 F.2d at 826; RCFC 52.1.

### 2.      Plaintiff Has Not Shown That The Post-Trial Proceedings Were Fundamentally Unfair

Lastly, plaintiff also fails to show that the post-trial proceedings related to his general court-martial were fundamentally unfair. In his cross-motion, plaintiff raises several objections to the post-trial review of his UCI claim and to his general court-martial sentence and conviction. Pl. Mot. at 53-61; Pl. Reply 10-22. For the reasons discussed below, the record evidence shows that plaintiff has had a full and fair opportunity to address these alleged errors. And so, the Court **GRANTS** the government's motion for judgment upon the administrative record and **DENIES** plaintiff's cross-motion for judgment upon the administrative record regarding these post-trial matters.

### a.      Plaintiff Has Not Shown That The Proceedings Related To His Clemency Petition Were Fundamentally Unfair

First, plaintiff's claim that the Marine Corps committed errors during the review of his clemency petition are largely substantiated by the administrative record. But, plaintiff argues without persuasion that these errors caused the clemency process to be constitutionally unfair.

---

[5] At the end of the court-martial, plaintiff acknowledged that his court-martial was a fair trial. AR Tab 155.1 at 4297 ("I finally realize that the judicial system is fair . . . the truth came out this week.").

Pl. Mot. at 56.  While plaintiff correctly observes that the Staff Judge Advocate did not have a copy of his motion to dismiss for UCI during the preparation of the initial recommendation related to his clemency petition, the administrative record shows that plaintiff attached this motion to his clemency petition and that the Staff Judge Advocate reviewed the motion in connection with the preparation of the addendum to that recommendation.  AR Tab 6 at 202-287; AR Tab 3 at 10-11.  And so, plaintiff has not shown that the Staff Judge Advocate was unaware of, or disregarded, the grounds for plaintiff's motion to dismiss for UCI during the clemency process.

Plaintiff also has not shown that he has been prejudiced by the Staff Judge Advocate's failure to timely serve him with copies of the recommendation and supplemental addendum related to his clemency petition, as required by R.C.M. 1106(f).  Pl. Mot. at 58.  Plaintiff correctly observes that the Staff Judge Advocate did not serve his counsel with a copy of the recommendation and addendum before sending these documents to the Convening Authority, as required by R.C.M. 1106(f).[6]  AR Tabs 4, 13.  But, the record evidence makes clear that plaintiff was not prejudiced by these errors.  In this regard, the record evidence shows that plaintiff was given the opportunity to review the Staff judge Advocate's recommendation before submitting his clemency petition.  AR Tab 6.  The record evidence also shows that, after plaintiff submitted his clemency petition, the Staff Judge Advocate prepared and submitted an addendum to his recommendation to the Convening Authority that solely addressed the legal issues raised by plaintiff in that petition.  AR Tab 3.  Given this evidence, the record evidence shows that plaintiff had the opportunity to review the Staff Judge Advocate's recommendation and that the Marine Corps fully and fairly considered his clemency petition.

Lastly, plaintiff's claim that his right to submit matters to the Convening Authority "has been fundamentally violated," because the Staff Judge Advocate did not have a verbatim transcript of the general court-martial proceedings during the preparation of the recommendation and addendum related to his clemency petition, is equally unavailing.  Pl. Mot. at 56-57; *see* AR

---

[6] R.C.M. 1106(f)(1) requires that the Staff Judge Advocate shall "cause a copy of the recommendation to be served on the counsel for the accused," before the Staff Judge Advocate's recommendation and the record of trial is sent to the Convening Authority.  R.C.M. 1106(f)(1).  R.C.M 1106(f)(7) requires that the Staff Judge Advocate serve "the accused and counsel . . . with the new matter and give[] 10 days from service of the addendum in which to submit matters."  *See also* R.C.M. 1106(f)(7) discussion.

Tab 8.  Again, the record evidence substantiates plaintiff's claim that the Staff Judge Advocate did not have a verbatim transcript of the general court-martial proceedings when he prepared the recommendation and addendum.  Pl. Mot. at 56-57; *see* AR Tabs 9, 10.  But, plaintiff has not shown how he has been prejudiced by the lack of a verbatim transcript at that stage of the clemency process.  Notably, the Military Rules for Courts-Martial in effect at the time that plaintiff submitted his clemency petition required the preparation of a verbatim transcript of court-martial proceedings only in circumstances where the sentence involves a confinement for at least six months, or when a discharge from the military based upon bad conduct has been adjudged.[7]  R.C.M. 1103(b)(2)(B) (2012).  But, neither of these circumstances is present here. Plaintiff received a sentence of 30-days confinement, a reprimand and a reduction in pay grade. AR Tab 1 at 6.  Given this, the Court agrees with the government that the absence of a verbatim transcript at the time when the Staff Judge Advocate prepared the recommendation and addendum related to plaintiff's clemency petition did not violate R.C.M. 1103 or deprive plaintiff of a full and fair opportunity to pursue his clemency petition.

### b.  Plaintiff Received Full And Fair Consideration Of His Claims During The Article 69 Appeal

Plaintiff's claim that the proceedings related to his Article 69(a) appeal were fundamentally unfair and warrant vacating his sentence and conviction are also not persuasive. Pl. Mot. at 58-60.  Plaintiff's objection to the Article 69(a) proceedings centers upon the Navy's decision to supplement the record of trial for the general court-martial with a verbatim trial transcript.  *Id.*; Pl. Reply at 14-15.  Specifically, plaintiff argues that the Navy Judge Advocate

---

[7]  R.C.M. 1103(b)(2)(B) provides that:

(B) *Verbatim transcript required.*  Except as otherwise provided in subsection (j) of this rule, the record of trial shall include a verbatim transcript of all sessions except sessions closed for deliberations and voting when:

(i) Any part of the sentence adjudged exceeds six months confinement, forfeiture of pay greater than two-thirds pay per month, or any forfeiture of pay for more than six months or other punishments that may be adjudged by a special court-martial; or

(ii) A bad conduct discharge has been adjudged.

R.C.M. 1103(b)(2)(B) (2012).

General violated R.C.M. 1104 by failing to modify or set aside the general court-martial findings and/or sentence, and to remand the matter to the Convening Authority, when the Navy suspended the review of the summarized record of trial so that the record of trial could be supplemented with a verbatim transcript.  Pl. Mot. at 59.

But, as the government explains in its motion for judgment upon the administrative record, the Judge Advocate General is afforded broad discretion in deciding whether to modify and set aside general court-martial findings, or to remand a matter to the Convening Authority. Def. Mot. at 38.  Specifically, R.C.M. 1104(d) provides that the Judge Advocate General "may" set aside a record of trial if it is incomplete, defective, or otherwise inaccurate and return it to the Convening Authority.  R.C.M. 1104(d).  Given the broad discretion afforded to the Judge Advocate General in this regard, plaintiff has not shown that the Judge Advocate General violated R.C.M. 1104 by declining to modify or set aside the general court-martial findings and to remand the matter to the Convening Authority in this case.  R.C.M. 1104(d)(1); *see also United States v. Mosley*, 35 M.J. 693, 695 (N.M.C.M.R. 1992).

Plaintiff's argument that the Navy's authentication procedures during his Article 69(a) appeal violated R.C.M. 1104(d)(2) is also unconvincing.[8]  Pl. Mot. at 59-60.  Plaintiff argues that he was not afforded a reasonable opportunity to review a certificate of correction of the record of trial prior to the authentication of the supplemented record of trial for his general court-martial

---

[8] R.C.M. 1104(d) provides, in relevant part, that:

(d) *Correction of record after authentication; certificate of correction.*

(1) *In general.* A record of trial found to be incomplete or defective after authentication may be corrected to make it accurate.  A record of trial may be returned to the convening authority by superior competent authority for correction under this rule.

(2) *Procedure.*  An authenticated record of trial believed to be incomplete or defective may be returned to the military judge or summary court-martial for a certificate of correction.  The military judge or summary court-martial shall give notice of the proposed correction to all parties and permit them to examine and respond to the proposed correction before authenticating the certificate of correction.  All parties shall be given reasonable access to any original reporter's notes or tapes of the proceedings.

R.C.M. 1104(d)(1)-(2).

proceedings after the Navy added the verbatim transcript of the general court-martial proceedings. *Id.* at 60. But, the administrative record makes clear that the Navy afforded plaintiff sufficient time to review the certificate of correction prior to the authentication of the supplemented record of trial. Specifically, the administrative record shows that the Office of the Judge Advocate General notified plaintiff that the Navy was preparing a verbatim transcript of the general court-martial proceedings on December 1, 2016. AR Tab 147. Thereafter, plaintiff received a copy of the verbatim transcript of the court-martial proceedings on March 29, 2017, and the Navy afforded plaintiff 15 days—until April 13, 2017—to review the verbatim transcript, consistent with R.C.M. 1104(d)(2). AR Tabs 152-53. Given this, the administrative record shows that the Navy complied with the R.C.M. in authenticating the supplemented record of trial and that plaintiff received full and fair consideration of the legal errors that he alleged occurred during the Article 69(a) appeal.

### c.       Plaintiff Has Not Shown That The Judge Advocate General Erred By Declining To Refer His Case For Appellate Review

Lastly, plaintiff has not shown that his post-trial proceedings were fundamentally unfair because the Navy Judge Advocate General declined to refer his case for appellate review by the Navy-Marine Corps Court of Criminal Appeals. Pl. Mot. at 60-61; Pl. Reply 10-22. The Judge Advocate General is afforded discretion in determining whether a case should be referred to the Navy-Marine Corps Court of Criminal Appeals. Notably, R.C.M. 1201(b)(1) provides that "*[i]f the Judge Advocate General so directs, the record shall be reviewed by a Court of Criminal Appeals . . .*" R.C.M. 1201(b)(1) (emphasis supplied); *see also* 10 U.S.C. § 869(d) (providing that a Court of Criminal Appeals may only review cases sent to the Court by the order of the Judge Advocate General). Plaintiff points to no evidence in the administrative record to show that the Judge Advocate General abused that discretion here. Pl. Mot. at 60-61; Pl. Reply at 17-19. And so, plaintiff has not shown that the Judge Advocate General violated R.C.M. 1105, or abused his discretion in declining to refer plaintiff's case for appellate review.[9]

_____

[9] Because the Court concludes that plaintiff has not shown that any of the alleged errors during the general court-martial and post-trial proceedings constitute such a deprivation of fundamental fairness as to impair his constitutional due process rights, the Court does not reach the remaining issues raised in the government's motion for judgment upon the administrative record.

### C.      Relief From The Court's Protective Order Is Not Warranted

As a final matter, plaintiff has not shown that he is entitled to relief from the Protective Order entered in this matter on April 24, 2018.[10]  In his motion for relief from protective order, plaintiff seeks to publicly disclose the identities of several witnesses who testified against him during his general court-martial.  *See generally* Pl. Mot. for Relief.  In support of this motion, plaintiff argues that the Privacy Act and the United States Department of Defense's ("DoD") SAPR Program do not prohibit the public disclosure of information about the identities of these witnesses, because he previously obtained this information during public proceedings associated with his general court-martial proceedings.  Pl. Mot. for Relief at 12-14.  Plaintiff also argues that the subject witnesses have waived any protections afforded to them under the Privacy Act, because plaintiff publicly disclosed their identities during his district court litigation.  *Id.* at 14-18.  And so, plaintiff contends that the public interest in disclosing this information outweighs the privacy interests of these witnesses.  *Id.*

The government counters that the identities of the subject witnesses and their witness statements are protected from disclosure under the Privacy Act, the SAPR Program and applicable DoD regulations.  Def. Opp. to Mot. for Relief at 7-10.  The government also argues that relief from the Court's Protective Order is not warranted in this case, because plaintiff has not shown that the redactions to the administrative record to protect the confidentiality of this information have prevented him from obtaining due process in this case, or deprived the public of needed information.  *See generally* Def. Opp. to Mot. for Relief.

For the reasons set forth below, plaintiff has not shown that relief from the Protective Order is warranted.  And so, the Court **DENIES** plaintiff's motion for relief from protective order.

First, the government persuasively argues that the statements of the witnesses at issue are protected from disclosure under the DoD's SAPR Program.  Def. Opp. to Mot. for Relief at 7-8.

---

[10]  The Court's Protective Order provides that the Court has "determined that certain information to be filed in connection with the Military Pay Act matter may be covered by the Privacy Act, 5 U.S.C. § 552a."  Protective Order at 1.  The Court has authorized the government to disclose this information to plaintiff and his counsel in connection with this litigation, subject to certain restrictions, including that the information be used solely for purpose of this litigation.  *Id.* at 3.

The government explains that DoD has covered reported sexual assault incidents as part of a Privacy Act "system of records."  Def. Opp. to Mot. at 7; Privacy Act of 1974; System of Records, 80 Fed. Reg. 68,302 (Nov. 4, 2015); *see also Sexual Assault Prevention & Response Program Procedures*, DoD Instruction No. 6495.02, Encl. 4, ¶ 3.b, 4.b(2) (Mar. 28, 2013). Because there is no dispute that the statements of the subject witnesses are contained in the DoD SAPR Program reports, the Court agrees with the government that these witness statements are subject to the Privacy Act and that the identity of the subject witnesses and their statements should not be publicly disclosed in connection with this litigation.  *See* 80 Fed. Reg. at 68,302-03.

Plaintiff also has not shown that the release of information about the identities of the subject witnesses to him in connection with his general court-martial proceedings requires that the Court make this information public in connection with this litigation.  It is undisputed that the Marine Corps previously released information about the identities of the subject witnesses to plaintiff in connection with the preparation of plaintiff's clemency petition.  Def. Opp. to Mot. for Relief at 9; AR Tab 10 at 292 (stating that a summarized report and transcript of the proceedings will be served on plaintiff); *see also* AR Tabs 17-17.5 (summarized report and transcript of the proceedings).  But, plaintiff has not shown that the prior release of this information for the purpose of preparing his clemency petition justifies the public release of this information in connection with this case.  Indeed, as the government observes in its response and opposition to plaintiff's motion for relief, the privacy rights of the subject witnesses—alleged victims of sexual assault and sexual harassment—weighs heavily in favor of protecting their identities and statements from public disclosure.  Def. Opp. to Mot. at 8-9.

In addition, plaintiff has not shown how allowing the Protective Order to remain in place with respect to the identities of the subject witnesses would prevent him from obtaining due process in this case.  Pl. Mot. for Relief at 12-14.  Pursuant to the terms of the Court's Protective Order, both plaintiff and his counsel have access to the identities of the subject witnesses and to their statements.  *See* Protective Order, dated April 23, 2018 at 3.  Plaintiff also fails to identify any public interest that would be served by publicly disclosing the identities and statements of these witnesses.  Pl. Mot. at 16-18.

Indeed, as the government observes in its opposition to plaintiff's motion for relief, the Protective Order entered in this case carefully balances plaintiff's legitimate need to access confidential information regarding the witnesses that testified against him during the general court-martial proceedings, while safeguarding the government's legitimate need to protect the privacy rights of these witnesses.  Def. Opp. to Mot. at 10-12.  Plaintiff simply has not explained how the public disclosure of information about the identities of these witnesses will aid him in the litigation of this dispute.  Nor has plaintiff explained how such a disclosure would advance the public's understanding of this case.  Given this, plaintiff has not met his burden to show that relief from the Court's Protective Order is warranted in this case.  And so, the Court **DENIES** plaintiff's motion for relief from protective order.

## V.        CONCLUSION

In sum, the undisputed material facts in this matter show that plaintiff is collaterally estopped from relitigating the issue of whether certain witnesses conspired to falsely accuse him of sexual assault and sexual harassment during his general court-martial proceedings.  The administrative record in this matter also shows that any infirmities during plaintiff's general court-martial and post-trial proceedings did not rise to a constitutional level or, constitute a proceeding that is more a spectacle on trial by ordeal.  Lastly, plaintiff has not shown that he is entitled to relief from the Protective Order entered in this case.

And so, for the foregoing reasons, the Court:

1.  **GRANTS** the government's motion for summary judgment;

2.  **GRANTS** the government's motion for judgment upon the administrative record;

3.  **DENIES** plaintiff's cross-motion for judgment upon the administrative record;

4.  **DENIES** plaintiff's motion for relief from protective order; and

5.  **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on April 24, 2018.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **September 3, 2019**.

       **IT IS SO ORDERED.**

                             s/ Lydia Kay Griggsby
                             LYDIA KAY GRIGGSBY
                             Judge